IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NEAL SUTTON,
*Plaintiff*,

v.

Civil Action No. ELH-16-3364

SUSAN BILLINGS, et al.
*Defendants.*

## MEMORANDUM OPINION

Plaintiff Neal Sutton, a firefighter and emergency medical technician with the District of Columbia Fire & EMS Department ("DCFEMS"), filed suit against several defendants, including Anne Arundel County, Maryland ("A.A. County" or the "County"); the District of Columbia ("D.C." or the "District"); and his former wife, Susan Billings. ECF 1.[1] In an Amended Complaint (ECF 14), Sutton has alleged a hodgepodge of claims.

In particular, Sutton alleges that the District discriminated against him on the basis of his marital status, in violation of D.C. Code §§ 2-1402.11 (a) and (b)[2]; suspended him from his job, without providing him with notice and the opportunity for a hearing; and violated the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.* ("ADA"). ECF 14, ¶¶ 32-43. Furthermore, Sutton alleges a host of claims against A.A. County under Maryland law

---

[1] In his Complaint, Sutton sued Billings; the Anne Arundel County Police Department; DCFEMS; and nine other individual defendants who were employees of those two departments. ECF 1. In December 2016, the Anne Arundel County Police Department defendants and the DCFEMS defendants moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(5), for insufficient service of process. ECF 10 (DCFEMS defendants); ECF 11 (Anne Arundel County Police Department defendants). Plaintiff then filed an Amended Complaint on January 3, 2017. ECF 14. By Order of January 9, 2017 (ECF 17), I denied the two motions to dismiss as moot. In the Amended Complaint, Sutton did not rename many of the defendants he had initially sued.

[2] Plaintiff erroneously states that the applicable section of the D.C. Code is § 2-1401.11. To my knowledge, no such section exists.

and 42 U.S.C. § 1983, arising from alleged misconduct on the part of the A.A. County Police Department and its officers. *Id.* ¶¶ 44-67. Plaintiff's State law claims against A.A. County include, *inter alia*, defamation. *Id.* ¶ 64. And, Sutton alleges various Maryland law claims against Billings, including harassment and intimidation. *See id.* ¶¶ 10-31. Sutton seeks a total of about $34,000,000 in actual and punitive damages. *See* ECF 14.

Now pending is the District's motion to dismiss (ECF 18), which is supported by a memorandum of law. ECF 18-1 (collectively, "D. C. Motion"). Plaintiff has responded in opposition (ECF 22, "Opposition") and the District replied. ECF 25. Also pending is the County's motion to dismiss (ECF 19), which is supported by a memorandum of law. ECF 19-1 (collectively, "A.A. Motion"). Plaintiff responded in opposition (ECF 28, "Response") and the County replied. ECF 29.[3]

The motions are fully briefed and no hearing is necessary to resolve them. *See* Local Rule 105.6. For the reasons that follow, I shall grant the motions with respect to plaintiff's claims under § 1983 and the ADA. And, I shall decline to exercise supplemental jurisdiction with regard to plaintiff's claims under Maryland and D.C. law.

## I.  Factual Background[4]

Plaintiff is a full-time Firefighter and Emergency Medical Technician (EMT) at the Washington, D.C. Fire & EMS Department.

---

[3] Billings has not yet appeared in the litigation. *See* docket. In ECF 7, counsel for plaintiff certified that on November 6, 2016, he "mailed a Summons in a Civil Action regarding the above-captioned case via First Class U.S. mail to" all of the defendants in the original complaint (ECF 1), including Billings. But, service by first class mail is not permitted under either Fed. R. Civ. P. 4(e) or Md. Rule 2-121(a).

[4] I note that the facts alleged by plaintiff are difficult to follow and the dates of the allegations appear to suffer from typographical errors. I have flagged those dates that appear to be erroneous. Nevertheless, given the procedural posture of this case, I assume the truth of any well-pleaded facts asserted in the Amended Complaint.

On September 19, 2004, plaintiff married Susan Smith. ECF 14, ¶ 5.[5] After their marriage, Sutton and Smith moved to Crownsville, Maryland. *Id.* ¶ 6.

Beginning in 2009, Sutton began to notice changes in Billings's behavior and states that she became "generally suspicious." ECF 14, ¶ 7. Plaintiff noticed that Billings appeared to have memory lapses and mood swings. *Id.* Dr. A. Rosen examined Billings and informed her that she "appeared to suffer from a dysthymic disorder." *Id.*

The Suttons' relationship began to deteriorate, resulting in a four-month separation in the second half of 2010. *Id.* ¶ 8. The Suttons were granted an absolute divorce by the Circuit Court for Anne Arundel County on October 16, 2014. *Id.* ¶ 9.

At approximately 1:10 p.m. on December 31, 2015, while plaintiff was driving in Anne Arundel County, he noticed that Billings was following him. *Id.* ¶ 11. Billings followed plaintiff to a Target store in Glen Burnie, and parked one row away from him. *Id.* ¶ 14. After Sutton noticed that Billings had followed him inside the store, he left and drove away. *Id.* Sutton then saw an Anne Arundel County police officer sitting in a nearby parking lot. *Id.* ¶ 15. Sutton approached the officer and told him that Billings was following him. *Id.* But, the officer told him to contact the Baltimore City Police Department. *Id.* After Sutton "protested," the officer received a call for service, and told Sutton that he (Sutton) could either wait for the officer to return, or contact the police in either the County or Baltimore City. *Id.*

While driving home in Baltimore City, Sutton passed two Baltimore City police officers, and told them what had happened and that he feared for his safety. *Id.* ¶ 17. The two police officers told Sutton that there was nothing that they could do for him. *Id.*

---

[5] Plaintiff states that Billings's maiden name was "Susan Smith" and that she adopted Sutton's surname. ECF 14, ¶ 5.

On November 1, 2015, Sutton noticed that Billings was again following him. *Id.* ¶¶ 18-19. After attempting to evade her, Sutton pulled into the parking lot for the Glen Burnie division of the District Court for Anne Arundel County. *Id.* ¶ 19. Billings pulled within one foot of Sutton's rear bumper and then left. *Id.*

On November 10, 2015[6], while Sutton was driving on Maryland Route 175, Sutton noticed Billings and "John C. Tubman" driving in the opposite direction. *Id.* ¶ 20. According to Sutton, Billings was "embracing" Tubman and "leaned her head near Tubman and kissed his cheek." *Id.* Then, during the early morning hours of November 15, 2015, Billings parked in front of Sutton's home in Baltimore, honked her horn twice, and drove off. *Id.* ¶ 21. She then returned several minutes later, honked her horn, and drove off again. *Id.* As a result of Billings's actions, plaintiff "sought and received advice and treatment of mental health professionals and physicians." *Id.* ¶ 23; *see id.* ¶¶ 24-25.

Plaintiff states, without any context, that in the fall of 2012,[7] Fire Chief Donlon "told Plaintiff that he should lose his wife or lose his job." *Id.* ¶ 37.

On or about June 29, 2015, the Chief of the DCFEMS, Gregory Dean, "caused a Notice of Intent to Suspend to be mailed to Plaintiff." *Id.* ¶ 33. But, the Notice of Intent to Suspend ("Notice") was sent to Billings's home in Crownsville, despite the fact that Sutton had moved out. *Id.* Plaintiff claims that he never received the Notice. *Id.* The Notice provided that the reason for the proposed suspension was that Sutton had violated a protective order issued by the

---

[6] Plaintiff states in the Amended Complaint that the date was November 10, 2012. ECF 14, ¶ 20. Presumably, plaintiff intended to write November 10, 2015, given the location of this allegation in the factual recitation and its apparent relation to other events around that time.

[7] From its position in the factual recitation after events that occurred in 2015, it appeared that this event may have occurred in the fall of 2015 rather than fall of 2012. As indicated, plaintiff divorced Billings in October 2014. ECF 14, ¶ 9.

District Court of Maryland for A.A. County. *Id.* ¶ 34. Thereafter, plaintiff was suspended for twelve work hours in August 2015, resulting in lost wages of $418.56. *Id.* ¶ 36.

On or about March 29, 2012, at the direction of former Police Chief Kevin Davis, Sgt. Cox and Officer Heineke of the Anne Arundel Police Department "told Susan K. Billings . . . and representatives of the Washington D.C. Fire & EMS [D]epartment that Plaintiff is 'paranoid, delusional and dangerous.'" *Id.* ¶ 63. At some point after January 6, 2013, Detective Overbay "filed" a criminal proceeding against Sutton, alleging that he had trespassed at Billings's home, despite the fact that she had asked Sutton to come over. *Id.* ¶ 59. Sutton states that, as a result, he was "detained and forced to submit to lengthy and troublesome criminal proceedings in the state courts." *Id.*

Then, on or about January 2, 2014,[8] plaintiff entered the Western District office of the A.A. County Police Department and asked to file a police report concerning threatening telephone calls that he had received. *Id.* ¶ 49.[9] Officer Everett, who assisted Sutton, refused to allow him to file a police report, and informed him that there may be an outstanding warrant for his arrest. *Id.* But, Officer Everett did not attempt to arrest Sutton. *Id.*

Thereafter, on or about August 10, 2014, Cpl. McDermott of the Anne Arundel Police Department hosted a meeting that included Sutton, two members of the "Anne Arundel Crisis Intervention Team," two Baltimore City police officers, and a personal friend of plaintiff. *Id.* ¶

---

[8] Again, plaintiff alleges that the incident occurred in 2012, but it is included in the factual recitation sequentially after events that had occurred in 2014. *Id.* ¶ 49. Plaintiff also provides that this allegation was related to his "divorce proceedings," which took place in 2013 and 2014. *Id.* ¶ 9. I note that state court records reflect that the divorce proceeding was filed in the Circuit Court for Anne Arundel County on April 25, 2013. *See* Doc. 1, Case No. 02-C-13-177954 (Cir. Ct. Anne Arundel Cnty.). Therefore, the Court assumes that allegations in paragraph 49 of the Amended Complaint occurred in 2014.

[9] Plaintiff does not identify the person he believes was responsible for the calls.

53. During this meeting, plaintiff discussed the threatening telephone calls that he had received after an arson at his Crownsville home,[10] and his claims that Billings had been harassing him. *Id.* ¶ 54. At the end of the meeting, J. Corbin of the Anne Arundel Crisis Intervention Team told plaintiff to "put away his papers, change his telephone numbers and 'start a new life.'" *Id.* Corbin also told Sutton that Chief Davis "did not want to hear about Plaintiff's problems again." *Id.*

According to plaintiff, on or about September 27, 2014, "Anne Arundel County Police Chief Kevin Davis told D.C. Fire and EMS Chief Eugene Jones . . . that Plaintiff 'is paranoid, delusional, suicidal and homicidal and that Plaintiff possessed firearms and that he was threatening to kill people.'" *Id.* ¶ 45. Plaintiff disputes these assertions. *Id.* ¶¶ 47-48. Then, on or about June 24, 2016, an A.A. County Police Officer in a marked patrol vehicle "parked in front of Plaintiff's residence . . . in Baltimore City." *Id.* ¶ 65. The officer waived at plaintiff "for approximately one full minute" and then drove away." *Id.*

## II.     Standard of Review

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, ___ U.S. ____, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a

---

[10] Plaintiff provides no further information about the alleged arson.

"short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, ___ U.S. ____, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotations omitted).  "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer"

that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, ___ U.S. ____, 132 S. Ct. 1960 (2012).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555–56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative

defense 'clearly appear[ ] on the face of the complaint.'"  *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman* ).

Under limited exceptions, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).  A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ."  *Goines*, 822 F.3d at 166 (citations omitted); *see U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

### III.    Discussion

As indicated, plaintiff has asserted a medley of claims against Billings, the County, and the District.  ECF 14.  Plaintiff's claims under 42 U.S.C. § 1983 and the ADA are brought pursuant to the Court's federal question jurisdiction.  ECF 14, ¶ 2; *see* 28 U.S.C. § 1331.  The remainder of the claims are brought pursuant to the Court's supplemental jurisdiction.  ECF 14, ¶ 2; *see* 28 U.S.C. § 1367.

### A.  Claims under 42 U.S.C. § 1983

### 1.

Section 1983 of 42 U.S.C. provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  *See, e.g., Filarsky v.*

*Delia*, 566 U.S. 377 (2012). However, § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

To state a claim under § 1983, "a plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States." *Wahi v. Charleston Area Medical Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *see Filarsky v. Delia*, 566 U.S. 377, 383 (2012); *Loftus v. Bobzien*, 848 F.3d 278, 285 (4th Cir. 2017). The phrase "under color of state law" is an element that "is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips*, *supra*, 572 F.3d at 180.

Local governments and municipalities, including the District, are subject to suit under § 1983. *See Monell v. Dept. of Social Servs. of Cty. of New York*, 436 U.S. 658, 690 (1978); *see also, e.g.*, *Doe v. D.C.*, 796 F.3d 96, 105 (D.C. Cir. 2015) (applying *Monell* to the District). But, liability attaches "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original); *accord Holloman v. Markowski*, 661 Fed. App'x. 797, 799 (4th Cir. 2016) (per curiam), *cert. denied*, ___ U.S. ___, 135 S. Ct. 1342 (2017).

A viable § 1983 *Monell* claim has two elements: (1) the municipality had an unconstitutional "policy or custom"; and (2) the unconstitutional "policy or custom" caused a violation of the plaintiff's constitutional rights. *See, e.g.*, *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). The District of Columbia is a municipality for the purpose of *Monell* liability. *See Robinson v.*

*D.C.*, 200 F. Supp. 3d 104, 106 (D.D.C. 2016); *Jordan v. District of Columbia*, 113 F. Supp. 3d 278, 281 (D.D.C. 2015).

In *Monell*, 436 U.S. 658, the Supreme Court determined that local governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants, but only if those defendants were executing an official policy or custom of the local government that resulted in a violation of the plaintiff's rights. *Monell*, 436 U.S. at 690-91. The Court said that, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Id.* at 694; *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

Therefore, "Section 1983 plaintiffs seeking to impose liability on a municipality must . . . adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994); *see also Holloman*, 661 Fed. App'x at 799. However, a municipality cannot be held liable in a § 1983 action under a theory of respondeat superior. *Monell*, 436 U.S. at 693-94. Rather, "[l]iability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (citing *Monell*, 436 U.S. at 694). In other words, a municipality is liable when a "policy or custom" is "fairly attributable to the municipality as its 'own,' and is . . . the 'moving force' behind the particular constitutional violation." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987) (internal citations omitted); *see Moore v. Howard County Police Dep't*, CCB-10-1430, 2010 WL 4722043 at *2 (D. Md. Nov. 15, 2010).

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Comm'rs of Bryan Cty.*, 520 U.S. at 403-04. "An official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time,' and must be contrasted with 'episodic exercises of discretion in the operational details of government.'" *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999) (alteration in *Semple* and citations omitted).

In addition, "the governmental unit may create an official policy by making a single decision regarding a course of action in response to particular circumstances." *Id.*; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (observing that "a municipality may be liable under § 1983 for a single decision" by officials "'whose acts or edits may fairly be said to represent official policy . . . .'"). For there to be municipal liability under § 1983 based on a single official's decision, that official must have final decision making and policymaking authority. *Id.* at 485; *see also Brown*, 520 U.S. at 406.

"Outside of such formal decisionmaking channels, a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Monell*, 436 U.S. at 691); *see Simms ex rel. Simms v. Hardesty*, 303 F. Supp. 2d 656, 670 (D. Md. 2003). A custom "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell*, *supra*, 824 F.2d at 1387. In addition, "a policy or custom may possibly be inferred from

continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan*, *supra*, 743 F.2d at 229 (internal citations omitted).

A policy or custom that gives rise to § 1983 liability will not, however, "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Id.* at 230. Only when a municipality's conduct demonstrates a "deliberate indifference" to the rights of its inhabitants can the conduct be properly thought of as a "policy or custom" actionable under § 1983. *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997) (citing *Canton*, *supra*, 489 U.S. at 389); *accord Toomer-Frazier v. Columbia, City of*, ___ Fed. App'x ___, 2017 WL 1032090, at *1 (4th Cir. Mar. 16, 2017) (per curiam).

In *Connick v. Thompson*, 563 U.S. 51, 60 (2011), the Supreme Court explained, *id.* at 1359 (emphasis in *Connick*):

> A municipality or other local government may be liable under [§ 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692[ ] (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479[ ] (1986) (citing *Monell*, 436 U.S. at 665-683[ ]). They are not vicariously liable under § 1983 for their employees' actions. *See id.*, at 691 [ ]; *Canton*, 489 U.S. at 392 [ ]; *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 [ ](1997) (collecting cases).

In sum, a plaintiff may demonstrate the existence of an official policy in three ways: (1) a written ordinance or regulation; (2) certain affirmative decisions of policymaking officials; or (3) in certain omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, *supra*, 164 F.3d at 218.

**2.**

Plaintiff's claim under § 1983 against the District appears to emanate from DCFEMS's failure to provide him with notice and the opportunity for a hearing before his suspension in August of 2015.  ECF 14, ¶¶ 33-35.  According to plaintiff, had he "been advised of the Notice of Intent to Suspend in a proper and timely manner he could, and would, have undertaken steps . . . to reverse or alter the Suspension" proposed in the Notice.  *Id.* ¶ 35.

The Due Process Clause "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332, (1976); *see generally Londoner v. Cty. and Cnty. of Denver*, 210 U.S. 373 (1908).  In terms of procedural due process, courts have long recognized that "[t]he fundamental requisite of due process of law is [notice and] the opportunity to be heard."  *Grannis v. Ordean*, 234 U.S. 385, 394, 1363 (1914); *see Kaley v. United States*, ___ U.S. ___, 134 S.Ct. 1090 (2014) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (internal quotations omitted); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, (1950) (observing that procedural due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); *Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 146 (4th Cir.) ("At bottom, procedural due process requires fair notice of impending state action and an opportunity to be heard."), *cert. denied,* ___ U.S. ___, 134 S.Ct. 2667 (2014). Yet, "'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'" *Gilbert v.*

*Homar*, 520 U.S. 924, 930 (1997) (quoting *Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 895 (1961)).

In general, in order to succeed on a due process claim, whether substantive or procedural, the plaintiff must show (1) that he "has a constitutionally protected liberty or property interest"; and (2) that he "has been deprived of that protected interest by some form of state action . . . ." *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172 (4th Cir.1988) (internal quotations omitted); *accord Miller v. Hamm,* Case CCB–10–243, 2011 WL 9185, at *7 (D. Md. Jan. 3, 2011).

In the D.C. Motion, the District argues, ECF 18-1 at 6: "Plaintiff has failed to make any allegations in his complaint regarding the existence of a policy, custom, or practice on the part of the District of Columbia and therefore he has failed to plead a viable *Monell* claim." Thus, the District contends that plaintiff has failed to state a claim under *Monell*. *Id.*

In his Opposition, Sutton counters that dismissal is not appropriate. ECF 22 at 2. He states that, "at this early (i.e., pre-discovery) stage of the case, the information available to the court is the desperate claims of the Plaintiff, the inartful meanderings of his counsel, the eloquent (although substantially off-point) and compelling observations of the District's attorneys and the myriad holdings of several federal appellate courts." *Id.*

In my view, plaintiff has failed to state a claim against the District under *Monell*. As indicated, plaintiff's apparent theory of liability is that DCFEMS Chief Dean caused a Notice of Intent to Suspend to be issued to plaintiff, but the Notice was ultimately mailed to the wrong address. ECF 14, ¶ 33. From the facts alleged in the Amended Complaint, the Court can at most infer that Sutton's address had not been updated and that the Notice was sent to Sutton's former address. This claim does not remotely suggest a policy or custom on the part of the District.

As the District argues, Sutton has not alleged that, in mailing the Notice to plaintiff's former address, the District acted pursuant to an unconstitutional policy, custom, or practice. *See* ECF 14. More broadly, Sutton does not allege anywhere in the Amended Complaint that the District has a policy, custom, or practice of denying District employees the right to notice and a pre-suspension hearing. *Cf. Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*, 648 F.3d 986, 993 (9th Cir. 2011) (concluding that two Los Angeles County sheriff's deputies had stated a claim under *Monell* against Los Angeles County by alleging that defendants had "adopted a policy of denying post-suspension hearings to employees who resigned after the suspension was imposed but before the hearing was completed").

Furthermore, plaintiff's argument in his Opposition that Chief Dean of the DCFEMS was a "decision maker," such that his actions could subject the District to *Monell* liability, is unconvincing. Plaintiff does not allege in the Amended Complaint that Chief Dean was actually responsible for the decision to suspend plaintiff for twelve work hours. ECF 14, ¶ 35. At most, plaintiff alleges that Chief Dean directed that the Notice be sent to plaintiff. *Id.* ¶ 33. As the Supreme Court determined in *Cty. of St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1988), there is no *Monell* liability where the person considered to be a final decision maker was not actually involved with the alleged unconstitutional action. *See also Steinberg v. D.C.*, 952 F. Supp. 2d 22, 30 (D.D.C. 2013) ("Mr. Steinberg's case must fail because he has failed to provide any evidence that would allow a reasonable jury to conclude that one of the final decision makers (i.e., the Fire Chiefs) was aware of his case, and thus can be charged with a decision to ignore the . . . order and not to reinstate him.").

Moreover, even if Chief Dean were responsible for the Notice being sent to the wrong address and the subsequent suspension, plaintiff does not allege that Chief Dean was a final

decision maker with respect to personnel decisions. ECF 14, ¶¶ 33-35. To the contrary, the United States District Court for the District of Columbia has observed that the Chief of DCFEMS "is not a policymaker when he acts in accordance with personnel policies and administrative decisions . . . ." *Steinberg v. D.C.*, 901 F. Supp. 2d 63, 71 (D.D.C. 2012); *see also Coleman v. D.C.*, 828 F. Supp. 2d 87, 92 (D.D.C. 2011) ("This Court has no doubt that the Fire Chief possesses significant decision-making authority with respect to the fire department—but that is different than being the *final* policy maker, which is required before section 1983 liability may attach.") (emphasis in *Coleman*).

As these cases indicate, merely serving as the head of a municipal agency is not itself sufficient to establish that an individual has final policymaking authority over all matters. *See Crowley v. Prince George's Cnty., Md.*, 890 F.2d 683, 686 (4th Cir. 1989) ("[T]he Prince George's County police chief is responsible for personnel decisions within the police department, but he does not possess final policymaking authority. Article IX of the Prince George's County Charter unambiguously vests the authority to establish and administer a personnel system in the County Council and the County Executive.").

In sum, plaintiff's *Monell* claim against the District fails to state a claim because he has failed plausibly to allege that his lack of notice and a pre-suspension hearing were the result of an unconstitutional custom, policy, or practice of the District.

### 3.

Plaintiff asserts *Monell* claims against the County. These claims appear to proceed on several grounds: (1) that on several occasions the Anne Arundel County Police Department would not allow him to file a police report against Billings (ECF 14, ¶¶ 49-57); (2) that on March 29, 2012, former A.A. County Police Chief Kevin Davis directed two County officers to defame

him (*id.* ¶¶ 63-64); (3) that Davis personally defamed plaintiff on September 27, 2014 (*id.* ¶¶ 45-48); (3) that plaintiff was arrested sometime after January 6, 2013, without probable cause, for criminal trespass (*id.* ¶¶ 58-59); and (4) that plaintiff was threatened with arrest on November 7, 2014, for putting fliers on cars in a parking lot (*id.* ¶¶ 60-61).

In its motion to dismiss, Anne Arundel County argues that "there is no allegation anywhere that the County has a policy or practice of doing these things." ECF 19-1 at 5. The County states: "Plaintiff has failed to properly allege . . . that his injuries were caused pursuant to an official policy, custom or procedure of the County. Plaintiff has merely pled isolated incidents that do not give rise to liability being imposed upon the County." *Id.* According to the County, *id.* at 7: "Plaintiff is claiming that he was essentially denied access to the police department, defamed and threatened with arrest. It is not alleged, nor could plaintiff do so credibly, that Anne Arundel County has an official policy that encourages this type of behavior by its police officers."

In his Response, citing to *Pembaur*, *supra*, 475 U.S. at 480, Sutton argues that the alleged unconstitutional acts of the County were the result of actions by the "the County Executive and/or the highest-ranking Executive/manager in the county Police Department." ECF 28 at 4. Sutton also claims, citing to a Supreme Court case that predates the Court's seminal decisions in *Bell Atlantic v. Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 556 U.S. 662, that the pleading standards of Fed. R. Civ. P. 8(a) require only a "'short and plain statement'" of the claim such that the defendant will have fair notice of the claims against it. *Id.*

In my view, plaintiff has failed to state a claim against the County under § 1983. With respect to plaintiff's claims that A.A. County police officers refused to take his police report on various occasions, arrested him without probable cause, and threatened his arrest for posting

fliers, Sutton has not alleged that this conduct was the result of a policy, custom, or practice of the County.  At most, Sutton has alleged the existence of isolated incidents by County officers over a period of several years.  Even if Sutton were to allege that such actions were undertaken at the direction of the County, as he states in his Opposition, dismissal would still be appropriate because, as noted, "labels and conclusions" are not sufficient.  *Twombly*, 550 U.S. at 555.  These allegations are not sufficient plausibly to state a claim against the County under *Monell*.

Furthermore, as to plaintiff's claim that former A.A County Police Chief Kevin Davis defamed him or directed other officers to defame him, Sutton did not allege in his Complaint that Davis's conduct was the result of a custom, practice, or policy of the County.  *See* ECF 14.  Even assuming that Davis had final decision making and policymaking authority over policing matters in the County, Sutton has not explained how Davis's conduct violated the Constitution or laws of the United States.

In *Paul v. Davis*, 424 U.S. 693, 712 (1976), the Supreme Court made clear that "the interest in reputation alone . . . is quite different from the 'liberty' or 'property'" interests protected by the Due Process Clause of the Fifth and Fourteenth Amendments.  *Id.*  The Supreme Court noted that although states may protect against injury to reputation through tort law, "any harm or injury to that interest, even where . . . [it is] inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law . . . ."  *Id.*  Following *Paul*, the Supreme Court "repeatedly admonished judges to be wary of turning the Due Process Clause into 'a font of tort law' by permitting plaintiffs to constitutionalize State tort claims through artful pleading."  *Shirvinski v. United States Coast Guard*, 673 F.3d 308, 314 (4th Cir. 2012) (citing *Daniels v. Williams,* 474 U.S. 327, 332 (1986)).  For defamation to constitute a depravation of liberty or property under the Due Process Clause, a plaintiff must allege that the

injury to his reputation "distinctly altered or extinguished" his legal status. *Paul*, 424 U.S. at 733; *accord Shirvinski*, 673 F.3d at 315.

With respect to plaintiff's defamation claims, Sutton has not alleged anything more than that former Police Chief Kevin Davis, and two other County police officers under the "direct supervision and control" of Davis, damaged his reputation as to his employer and his former wife and that the alleged defamation caused unspecified "damages to Plaintiff's reputation and professional relationships . . . ." ECF 14, ¶¶ 45, 46, 63. He has not alleged that the defamation "distinctly altered or extinguished" his legal status. *See Paul*, 424 U.S. at 733. Thus, plaintiff's allegations do nothing more than attempt to "constitutionalize" State tort claims. *Shirvinski*, 673 F.3d at 314.

In view of the foregoing, I shall dismiss plaintiff's *Monell* claims against the County.

## B. ADA Claim

Sutton alleges that the District violated the ADA when Chief Donlon told plaintiff to "lose his wife or be discharged . . . ." ECF 14, ¶ 42.

The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id.* § 12101(b)(2). The statute "makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'" *Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) (quoting 42 U.S.C. § 12112(a) (2012)).

In particular, "[s]uch unlawful discrimination can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual

with a disability who is an applicant or employee . . . .'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)) (alterations in *Wilson*). In addition, "[t]he Act prohibits covered employers from discharging qualified employees because they are disabled." *Summers*, 740 F.3d at 328.

The ADA contains five titles. They are as follows: Title I, Employment; Title II, Public Services; Title III Public Accommodations; Title IV, Telecommunications; and Title V, Miscellaneous Provisions. *See* Pub. L. No. 101-336, 104 Stat. 327, 327.

Title I prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" is defined as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8).

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "qualified individual" is defined by Title II of the ADA as any person who, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

"Modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* the ADA incorporates that statute's enforcement procedures, *id.* § 12117(a), including the

requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC") before pursuing a suit in federal court . . . ." *See id.*, § 2000e–5(b), (f)(1); *see also Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012). The administrative claims process is "'an integral part'" of the enforcement scheme that Congress set out in Title VII, *id.* (quoting *Chacko v. Patuxent Inst.,* 429 F.3d 505, 510 (4th Cir. 2005)), and, by incorporation, in the ADA. *See Sydnor*, 681 F.3d at 593. "Allowing [the EEOC] first crack at these cases respects Congress's intent 'to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes.'" *Id.* (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). "A court should dismiss such a discrimination lawsuit if the plaintiff has not exhausted required administrative remedies before bringing suit." *Bailey v. Warfield & Rohr*, RDB-16-3255, 2017 WL 952662, at *3 (D. Md. Mar. 10, 2017), *aff'd*, ___ Fed. App'x ___, 2017 WL 1531993 (4th Cir. Apr. 28, 2017) (per curiam).

In its motion to dismiss, the District contends that Sutton's ADA claim is subject to dismissal because Sutton failed to allege that he exhausted his administrative remedies. ECF 18 at 8. In his Opposition, Sutton argues that there is no exhaustion requirement for violations of Title II of the ADA. ECF 22 at 2-4 (citing, *inter alia*, *CC Recovery, Inc. v. Cecil Cnty., Md.*, 26 F. Supp. 3d 487 (D. Md. 2014) and *Petersen v. Univ. of Wisc. Bd. of Regents*, 818 F. Supp. 1276 (W.D. Wisc. 1993)). But, Sutton does not explain why Title II of the ADA is applicable. *See* ECF 22 at 2-4. Furthermore, Sutton argues that he "has alleged way too much information and claims regarding his ex-wife and their failed marriage,[] in part because the executives, managers

and supervisors Sutton dealt with usually violated the local and federal provisions of the Family Medical Leave Act (FMLA) and the Americans with Disabilities Act (ADA) . . . ." *Id.* at 4-5.[11]

As an initial matter, Title I of the ADA is the most applicable section of the ADA with respect to plaintiff's claim. In the Complaint, plaintiff's sole allegation regarding the ADA is that Chief Donlon told him to "lose his wife or lose his job . . . ." ECF 14, ¶ 42. Plaintiff's allegation regarding his employer's threat to fire him is most closely related to Title I's employment protections, and remote from Title II's protections for public access to government services. *Compare* 42 U.S.C. § 12112(a) *with* 42 U.S.C. § 12132.

Plaintiff has failed to state a claim under Title I of the ADA because he has not alleged that he exhausted his administrative remedies. *See* ECF 14. As indicated, before filing a claim under Title I of the ADA, a plaintiff must exhaust his administrative remedies by filing a Charge of Discrimination with the EEOC and receiving a right to sue letter before filing suit in federal court. *See Sydnor*, 681 F.3d at 593. Accordingly, plaintiff's claim under Title I of the ADA must be dismissed. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (explaining that a failure to exhaust administrative remedies "deprives the federal courts of subject matter jurisdiction over the claim").

Even if plaintiff had exhausted his administrative remedies, he would not be entitled to relief. Plaintiff's claim under the ADA is most analogous to a claim of wrongful discharge, although he was not discharged. To establish a prima facie case of wrongful discharge, a plaintiff must show that (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable

---

[11] Plaintiff's statement regarding the Family Medical Leave Act is confounding given that plaintiff has not asserted a claim in his Amended Complaint under that statute. *See* ECF 14.

inference of unlawful discrimination. *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001); *see also Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 (4th Cir. 1997); *Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir.1995).

Here, plaintiff has not alleged any of these elements. Indeed, plaintiff contends only that he suffered an unpleasant comment by his employer. *See Plautz v. Potter*, 156 Fed. App'x 812, 817 (6th Cir. 2005) ("[A] threat to discharge is not an adverse employment action.").

## IV.    Conclusion

In view of the foregoing, I shall GRANT the motions to dismiss (ECF 18; ECF 19) as to plaintiff's claims under 42 U.S.C. § 1983 and the ADA, without prejudice, and with leave to amend. At this juncture, because I shall dismiss plaintiff's claims arising under federal law, I defer consideration of plaintiff's claims under the Court's supplemental jurisdiction, and therefore shall deny the motions to dismiss as to them, without prejudice. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).[12]

An Order follows, consistent with this Memorandum.

Date: May 26, 2017                                                      _____/s/_____
                                                                                            Ellen Lipton Hollander
                                                                                            United States District Judge

---

[12] Local laws of the District of Columbia are not considered to arise under "federal law" for the purpose of federal question jurisdiction. *See* 28 U.S.C. § 1364; *accord Dimond v. D.C.*, 792 F.2d 179, 188 (D.C. Cir. 1986) ("For purposes of federal question jurisdiction, Congress has expressly excluded all 'laws applicable exclusively to the District of Columbia' from the body of 'federal' law.").